James J. **RITTER**
v.
The **UNITED STATES.**
No. 394–64.

United States Court of Claims.
April 19, 1968.

Davis and Skelton, JJ., dissented in part.

Daniel M. Gribbon, Washington, D. C., attorney of record, for plaintiff, Brice M. Clagett and Covington & Burling, Washington, D. C., of counsel.

D. Knox Bemis, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant, Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS and SKELTON, Judges.

## OPINION

**PER CURIAM:**

This case was referred to Chief Trial Commissioner Marion T. Bennett with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a).

The commissioner has done so in an opinion and report filed on August 16, 1966. Exceptions to the commissioner's report and opinion were filed by the parties and the case has been submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case.* Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

**BENNETT, Chief Commissioner:**

This is an action to recover federal income taxes and interest thereon attributable to certain payments made to plaintiff by his employer in 1958. The issue is whether these payments, which were occasioned by a transfer of plaintiff's place of employment for the convenience of his employer, constitute ordinary income to plaintiff and, if so, whether plaintiff taxpayer may deduct as expenses the items for which payments were made. It is concluded on the law and the evidence that the payments are taxable as ordinary income, are not deductible, and that plaintiff's claim must be dismissed.

In the summer of 1957, plaintiff, then Regional Controller for the Western Region of the Data Processing Division of International Business Machines Corporation, hereinafter referred to as IBM, was informed that the Western Regional Headquarters were to be moved from San Francisco to Los Angeles in the fall of 1958 and that he, as Regional Controller, would similarly be required to relocate in order to retain his position within the company. At the time of plaintiff's move, it was IBM's established policy to reimburse its employees for certain expenses incurred when they were required by IBM to transfer from one location to another on a permanent basis. The tax effect of these reimbursements is now contested.

---

* The concurring in part and dissenting in part opinions of DAVIS, Judge, and SKELTON, Judge, follow the opinion of the Trial Commissioner which has been adopted by the court.

The first reimbursement question relates to IBM's so-called "Moving and Living Expense Policy" under which IBM reimbursed plaintiff for certain expenses he incurred in arranging for the sale of his home in the Mill Valley area of San Francisco, the movement of his household to Los Angeles, and the acquisition of a new home in the Los Angeles area. These reimbursed expenses which totaled $4,177.46 were not included by taxpayer in his income. It is the Service's basic disagreement with this treatment which is the essence of the present dispute.

Relying upon Rev.Rul. 54–429, 1954–2 CUM.BULL. 53, the Internal Revenue Service included the reimbursements for the following so-called "indirect expenses" in plaintiff's income: [1]

| | |
|---|---:|
| (a) Real estate appraisal of plaintiff's residence in Mill Valley | $ 130.00 |
| (b) Advertising the Mill Valley residence for sale in the Wall Street Journal | 15.75 |
| (c) Various upkeep and double interest charges for Mill Valley residence pending its sale after move to Los Angeles | 330.78 |
| (d) Closing costs on purchase of Los Angeles home | 500.00 |
| (e) Installation of carpeting in Los Angeles home | 132.82 |
| (f) Miscellaneous expenses of the move | 100.00 |
| (g) Remaking and rehanging draperies in Los Angeles residence | 245.00 |
| Total | 1,454.35 |

There is no dispute between the parties that these expenses were actually incurred, that they would not have been incurred but for the move required by IBM, or that they are reasonable in amount.

The next item of reimbursement in issue is under a policy called the "Home Guarantee Policy," [2] which provided financial assistance to all employees of IBM who owned homes they had to sell in order to transfer to a new location. The plan provided that an employee required to move at the request of IBM would receive no less than a guaranteed return upon the sale of his home, equal to its "appraised value" at the time of the required move. In summary, the Home Guarantee Policy was administered in the following manner: An employee's home would be appraised by two independent, qualified appraisers. One appraiser was selected by a local bank appointed by IBM to administer the policy in the particular locality and the other appraiser was selected by the employee from a list of qualified appraisers furnished the employee by the local bank. If the two appraisals differed by more than 5 percent, a third appraiser would be selected by the employee from the

---

1. It should be pointed out that a portion of the reimbursed expenses ($2,723.11) designated by the Service as "direct moving expenses" (i.e., the expenses of moving himself, his family, and his household goods), while not included by plaintiff in income, is nevertheless recognized by the Service as a proper exclusion from income and is not in issue in this proceeding.

2. At the time of the appraisal of plaintiff's home, IBM's Home Guarantee Policy was formally embodied in a document entitled "Moving and Living Policy—Financial Assistance Plans for Regular IBM Employees Moved at Company Request."

bank's list. The appraised value was the average of the two highest appraisals. Once the appraised value was determined, the employee could elect to enter into the Home Guarantee Policy under which IBM would guarantee that upon the sale of the home the employee would receive the full appraised value. The policy provided:

> If the net selling price of the employee's home is less than its appraised value, IBM will reimburse the employee for the difference between the two amounts.

The net selling price was defined as the selling price less certain selling costs, such as broker's commission, lawyer's fees, tax stamps, and title insurance.

Plaintiff's residence was appraised under the policy at $38,737.50. Despite the selling efforts of the plaintiff, the local bank and local realtors, a firm offer to purchase the residence was not received until October 2, 1958, some 2 weeks after plaintiff had moved to Los Angeles. The offer to purchase was at a gross price of $34,000 and, since this offer was more than 10 percent below the appraised value, under the terms of the policy, the special consent of IBM had to be obtained before the offer could be accepted.

The local bank recommended acceptance, IBM agreed, and the transaction was closed with the plaintiff selling his residence to an unrelated third party for $34,000 on November 6, 1958. It does not appear that the appraised value of plaintiff's residence was inflated to give him any amount over the fair market value at the time IBM directed his transfer. On November 6, 1958, plaintiff's basis for determining gain or loss was $37,640.67.

Under the terms of the Home Guarantee Policy, the net selling price received by plaintiff was $31,665.60. IBM reimbursed plaintiff for the difference between $31,665.60 and $38,737.50 for a net

of $7,071.90. The Internal Revenue Service included this amount in plaintiff's gross income for 1958 as additional compensation. Plaintiff has paid a capital gains tax and resists the higher payment arising from defendant's treatment of the sums involved as ordinary income.

### The Moving and Living Expense Policy

Plaintiff contends that he should not be required to pay income taxes on amounts received by way of reimbursement for expenses resulting from a move undertaken primarily for the convenience of his employer. More specifically, plaintiff contends that these reimbursements are not income as defined by the Internal Revenue Code of 1954, § 61, 68A Stat. 17, in that these reimbursements do not constitute wages, incentive compensation, or any other form of income nor do they bear "the essential elements of income." Alternatively, plaintiff contends that in the event these reimbursed expenses are income, then he is entitled to a deduction under sections 62 and 162 of the Code. 68A Stat. 17, 45.

Section 61(a) (1) of the Internal Revenue Code of 1954 provides:

> (a) General Definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

> (1) Compensation for services, including fees, commissions, and similar items;

The Treasury Regulations on Income Tax (1954 Code), section 1.61–1(a), state: "Gross income means all income from whatever source derived, unless excluded by law." 1 CCH 1966 Stand.Fed.Tax Rep. ¶ 630.

The Supreme Court has consistently given the term "gross income" as defined by the Revenue Code [3] a broad construc-

---

3. The 1938 and 1939 Revenue Codes (52 Stat. 457; 53 Stat. 9) defined gross income as income "in whatever form paid * * * derived from any source whatever" and the 1954 Code as "income from

whatever source derived." 68A Stat. 17. Adjusted gross income is gross income minus allowable statutory deductions and exclusions.

tion in order "to tax all gains except those specifically exempted." Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). In Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830 (1945), taxpayer's employer gave him, as compensation for his services, an option to purchase stock and the Court, holding the option to be taxable income when exercised, stated that the term gross income as defined by the Revenue Act "is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." 324 U.S. at 181, 65 S.Ct. at 593.

In Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), the Court again broadened the concept of what is taxable compensation. Taxpayer was granted an option by his employer to purchase stock. The Court held that it made no difference whether the option was intended to give the employee a proprietary interest in the business or whether it was intended to be compensation, but that as long as an *economic benefit* is conferred upon an employee for the purpose of securing better services, then the employee has realized taxable income. The Court said:

> We have repeatedly held that in defining "gross income" as broadly as it did in § 22(a) Congress intended to "tax all gains except those specifically exempted." * * *
>
> * * * When assets are transferred by an employer to an employee to secure better services they are plainly compensation. * * * Section 22(a) taxes income derived from compensation "in whatever form paid." * * * Lo Bue received a very substantial economic and financial benefit from his employer prompted by the employer's desire to get better work from him. This is "compensation for personal service" within the meaning of § 22(a). [351 U.S. at 246–247, 76

S.Ct. at 803; § 61(a), 1954 Code, supra.]

In Rev.Rul. 54–429, 1954–2 CUM.BULL. 53, the Commissioner ruled that amounts paid by an employer, either directly or as reimbursements, to defray an employee's actual cost of moving himself and his family from one place of employment to another, where the change was primarily for the benefit of the employer, are excluded from gross income. However, amounts received as reimbursement for other expenses, sometimes called "indirect" or "extraordinary" expenses, related to the move do constitute income to the employee and no offsetting deduction is allowed.

Several courts of appeals have considered the tax consequences of indirect moving cost reimbursements and have sustained the position of the Commissioner of Internal Revenue, holding such reimbursements includable in gross income and to be nondeductible personal living expenses. In England v. United States, 345 F.2d 414 (7th Cir. 1965), cert. denied, 382 U.S. 986, 86 S.Ct. 537, 15 L.Ed.2d 475 (1966), taxpayer was transferred by his employer from Kansas City, Missouri, to Springfield, Illinois. The court held that reimbursements for the costs of meals, lodging, and expenses incidental to securing housing at the new post were personal living expenses and includable in income and were nondeductible as business or travel expenses while away from home. See also Cockrell v. Commissioner of Internal Revenue, 321 F.2d 504 (8th Cir. 1963).

In Commissioner of Internal Revenue v. Mendel, 351 F.2d 580 (4th Cir. 1965), taxpayer, a physician employed by the United States Veterans Administration, was required by the Government to move from Newark, New Jersey, to Richmond, Virginia, in 1957. In making the transfer, taxpayer incurred direct moving expenses for which he was only partially reimbursed. He sought to deduct the difference. The court, reversing the Tax Court and disallowing the deduction for the cost of packing, transporting, stor-

age and handling of furniture in transit and for the cost of hotels and meals in transit, stated:

* * * The approach we must follow in a resolution of the issue is one exemplified by United States v. Woodall, 255 F.2d 370 (10 Cir. 1958), namely, that any economic or financial benefit conferred on an employee as compensation is gross income, and that there may be deducted from gross income only those expenditures expressly made deductible by statute.[4] Ordinar-

4. United States v. Woodall, 255 F.2d 370, 373 (10 Cir. 1958), "* * * it has * * * been long recognized that deductions are matters of legislative grace, *allowable only when there is a clear provision for them*, and do not turn upon equitable considerations. * * * What should be allowed as an expense deduction is a matter of policy for Congress, not the Courts." (emphasis supplied)

ily, reimbursement for moving expense to an existing employee would constitute gross income under the comprehensive definition in § 61(a) of the Revenue Code of 1954 * * *. Rev. Ruling 54–429, supra, sought to alleviate the rigors of the application of the statutory definition of gross income to reimbursement for moving expenses to an existing employee. An examination of the ruling discloses that its rationale is that reimbursement for moving expenses does not constitute gross income, *not,* as the Tax Court determined, that expenses of relocation are *per se* deductions for the employee. * * *. [351 F.2d at 582; see also Light v. Commissioner of Internal Revenue, 310 F.2d 716 (5th Cir. 1962).]

Plaintiff urges that John E. Cavanagh, 36 T.C. 300 (1961), should be controlling here. There, taxpayer was transferred from Washington, D. C., to Burbank, California, by his employer. Taxpayer was reimbursed for his transportation and moving costs and, in addition, reasonable living costs incurred in excess of living expenses while his household effects were in transit. The Tax Court held that Rev.Rul. 54–429, supra, applied and excluded all the expenses from income because it said such expenses should be regarded as the employer's expenses and not as reimbursement for the personal living costs of the taxpayer. The court said:

* * * to the extent such reimbursements defray the ordinary and necessary food and lodging costs of an employee they represent payment of an *employee's* living expense and are income to him, but to the extent such reimbursements defray only reasonable and necessary extraordinary food and lodging expense required to be incurred by the employer, they represent repayment to the employee of an amount he has first paid for and in behalf of his employer and do not constitute income to him. They are the employer's costs, not the employee's. To the extent the above ruling would require the inclusion in income of reimbursement for such extraordinary food and lodging costs, it is not a correct interpretation of section 22(a) or section 24(a) of the 1939 Code or sections 61(a) and 262 of the 1954 Code. The prohibition against the deduction of personal living expenses has reference only to such expenses as are ultimately chargeable to the taxpayer. It has no applicability to such expenses properly chargeable to another which the taxpayer pays and for which he is reimbursed. [36 T.C. at 304.]

In holding for the petitioner with respect to both the transportation of his family and household effects and the reimbursements for extraordinary costs of food and lodging, the court in *Cavanagh* was of the view that reasonable expenses in moving are not personal expenses (otherwise reimbursement would constitute taxable income) so that necessarily they must be ordinary and necessary business expenses. As ordinary and necessary business expenses, the court reasoned, taxpayer was entitled to deduct from gross income the unreimbursed portion thereof.

Plaintiff here now asserts that since his expenditures resulted solely from the transfer of IBM's Western Region Headquarters to Los Angeles, the reimbursements are properly an expense of IBM, thus not a personal expense so not taxable as compensation. Plaintiff suggests that the proper test is "if the event which caused the expenses for which the reimbursement was made was for the convenience of the employer, then such reimbursement is excludable from gross income." In other words, plaintiff suggests a "but for" approach. This was the approach adopted by the Tax Court in *Cavanagh,* supra, but subsequently ignored by the Court of Appeals for the Fifth Circuit in Light v. Commissioner of Internal Revenue, 310 F.2d 716 (5th Cir. 1962), questioned by the Court of Appeals for the Fourth Circuit in Commissioner of Internal Revenue v. Mendel, supra, and disapproved by the Seventh Circuit in England v. United States, supra, and the Eighth Circuit in Cockrell v. Commissioner of Internal Revenue, supra.

◼ There is no rule of federal income taxation that categorizes an item as "personal" and then automatically requires that the reimbursement for such item be included in gross income. The tax results of any item depend upon the context within which the payment was received or the expense was incurred. Cf. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The questions as to who was primarily benefited by the reimbursement, what event caused the expenditure or whether there was a loss are not necessarily determinative as to whether a payment is income under the tax law. Of course, when an employer reimburses an employee for an obviously personal expenditure, such reimbursement is clearly taxable as compensation, even though such expenditure be causally connected with furthering the employer's business. For example, if an employer reimburses an employee for income taxes payable upon his salary, such reimbursement is income, Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); or, if an employer reimburses an employee for additional costs of driving a certain make of automobile or for living in a particular locality, such reimbursements would clearly constitute additional compensation. Similarly, if an employee is reimbursed for essentially personal expenses connected with an employer-directed move, such reimbursements are not excludable from income merely because the expenses would not have been incurred but for the move. England v. United States, supra.

◼ Plaintiff also asserts that these reimbursements are not income in that the payments do not bear "the essential elements of income." He asserts that these reimbursements are not income because they were intended merely to alleviate a financial loss incurred as a result of the transfer. It is unnecessary to go into the matter of whether IBM intended these reimbursements to be compensation. The law is well settled that the statutory definition of gross income is broad enough to include as compensation any economic or financial benefit from any source, conferred in any form on an employee, unless specifically exempted by statute. Commissioner of Internal Revenue v. Lo Bue, supra; Commissioner of Internal Revenue v. Glenshaw Glass Co., supra; Commissioner of Internal Revenue v. Smith, supra. IBM was concerned with getting its employee's talents transferred to the new location and, as such, the reimbursements were an incentive or inducement to get plaintiff to make the required move.

◼ No claim has been made that these reimbursements were a gift; indeed, plaintiff specifically disavows any gift theory. IBM was motivated solely by its own business needs in making these reimbursements and since they are payments arising out of the employment relationship, conferring an economic benefit upon the taxpayer, *Lo Bue* re-

quires these reimbursements to be included in income.

■■ The next issue to be decided is whether plaintiff is entitled to a deduction under section 62 or 162 of the 154 Code for trade or business expenses. Plaintiff relies upon the principle of Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). There the Court denied a deduction for commuting costs on the basis that the employer received no benefit from the taxpayer's choice of his place to live. Plaintiff, relying upon *Cavanagh*, supra, asserts that his expenses were incurred for the convenience of his employer because IBM required him to move to Los Angeles for its convenience. This contention has already been discussed. Just because these expenses were incurred as a result of an employer-directed move does not enable an employee to circumscribe the statutory prohibition against deducting any "personal, living, or family expenses." Int.Rev.Code of 1954, § 262, 68A Stat. 76. The deduction for personal or indirect moving costs has been denied by other courts as noted above and was nowhere authorized by law or regulation.[4] Plaintiff is not entitled to the deduction claimed.

### The Home Guarantee Payment

The final question to be considered is the tax consequences of $7,071.90 representing reimbursement for the loss on the sale of plaintiff's residence below the appraised value.

A decision of the Tax Court, Otto Sorg Schairer, 9 T.C. 549 (1947), lays down the now-abandoned rule that reimbursement for loss on the sale of a residence incurred as a result of a transfer to a new location is merely a return of capital. That is to say, the reimbursement should be treated for tax purposes as part of the amount realized from the sale of the taxpayer's residence and not as additional compensation to the taxpayer. RCA made a payment to a long-standing employee, transferred from New York to Princeton for the convenience of RCA. The payment represented the difference between the net selling price of the old residence and its cost. The court determined that the reimbursement was not income but additional proceeds from the sale of the home.

In Jesse S. Rinehart, 18 T.C. 672 (1952), the court limited the *Schairer* rule, holding that a payment received by an employee toward the purchase price of a new home at the new location was taxable as compensation in that it was an evidence of the employer's desire to assure the continued services of the employee. In Arthur J. Kobacker, 37 T.C. 882 (1962), a new employee was taxed at ordinary income rates on a reimbursement for loss on the sale of his home because the court found that the payment was bargained for as a condition of accepting the new employment in a different city.

Finally, Bradley v. Commissioner of Internal Revenue, 324 F.2d 610 (4th Cir. 1963), affirming 39 T.C. 652, held taxable as incentive compensation a payment by an employer reimbursing a new employee for the difference between the appraised value and the sales price of the old residence. The Tax Court, three judges dissenting, specifically declined to follow *Schairer*. The Court of Appeals affirmed, holding as "illusory" *Schairer's* reasoning that the payment was not compensation because it was intended only as a guarantee against loss of capital.

In *Bradley*, the home sale arose from circumstances where an employee left the employ of one company and went with a new company in a different city entirely for his own convenience. After the employee had been on the new job for 2 months, his new employer agreed to absorb any loss the employee might suffer on the sale of his residence at

---

4. The Revenue Act of 1964, § 217, 78 Stat. 51, now permits an employee to deduct direct costs of moving his household goods and personal effects, including travel expenses, meals and lodging, to a new residence for employment at least 20 miles distant from his former residence.

his former place of employment. The payment thereafter made was correctly found to be an inducement or a cash bonus to secure the services of the new employee[5] or a payment to secure better services, *Lo Bue,* supra, and not a return of capital. See also, to the same effect, Willis B. Ferebee, 39 T.C. 801 (1963).

Recently the Tax Court has reaffirmed its position in *Bradley,* supra, and *Ferebee,* supra, in a case bearing a similarity to the instant proceedings. Ernest A. Pederson, Jr., 46 T.C. 155 (1966). Taxpayer, an employee of long standing with his company, was transferred for the convenience of his employer and at his employer's request from Detroit, Michigan, to Minneapolis, Minnesota. Several months after his transfer, taxpayer sold his Detroit residence at a loss notwithstanding a reimbursement by the employer of the selling expenses.[6] He attempted to distinguish cases in which a new employee was reimbursed for the loss from the sale of a house or of selling commissions from his own situation as an "old" employee with his company for 20 years. The court reviewed the history of these reimbursements and considered *Pederson* not to be distinguishable from *Bradley* and *Ferebee* and declared the reimbursement for selling expenses to be income. This was a final judicial abandonment of the rule in *Schairer,* supra, and of the line of cases given different tax treatment to old and new employees in similar factual situations. Additionally, the court said that such a reimbursement was not equivalent to direct moving expenses excludable as income under Rev. Rule. 54–429, supra.

Plaintiff argues strongly that the administration of the home guarantee plan did not operate as a subterfuge for additional compensation, but functioned only as a means of alleviating the financial loss which plaintiff sustained as a result of the required move. Thus, plaintiff argues that the payment was nothing more than a return of capital or a part of the amount realized from the sale under section 1001(a) of the Code, 68A Stat. 295, and that he has properly paid a capital gains tax on this transaction and owes nothing more.

In theory, when a taxpayer receives back funds which he has invested, these funds do not represent taxable income but are instead a return of capital. See generally 1 MERTENS, FEDERAL INCOME TAXATION § 5.06 (1962). However, the reimbursement in issue here cannot be considered as part of the amount realized from the sale of the home and, therefore, a return of capital. "A loss on the sale of a home is essentially a personal loss. Any reimbursement to the taxpayer of such loss means taxable income is realized." James D. Hayes, 25 CCH Tax Ct. Mem. 636 (1966). The reimbursement was separate and distinct from the sale. No reimbursement would have been made had plaintiff sold his home for the appraised value; no property interest whatever passed to IBM; the only *quid pro quo* IBM received was its employee's "peace of mind." IBM did not make such payments for the purely altruistic reason of alleviating a financial loss incurred by a move for its convenience, but for two good business reasons: To encourage plaintiff to make the required move by relieving him of anxiety and worry over the problem of selling his home and to assure IBM of his experience, talents and skills where and when it wanted them. As such, the reimbursement is an incentive payment, taxable as income, and in essence no different from the "moving expense reimbursement" considered under the first part of this opinion.

Defendant urges still another consideration upon the court in support of its

---

**5.** United States v. Woodall, 255 F.2d 370 (10th Cir. 1958) cert. denied, 358 U.S. 824, 79 S.Ct. 39, 3 L.Ed.2d 64; Kobacker, supra.

**6.** Taxpayer reported his basis for the Detroit residence as $16,546 and the sales price as $15,000. The selling expenses amounted to $1,088 so taxpayer, even considering the $1,088 reimbursement, still suffered a net loss.

contention that the Home Guarantee Policy contained elements of compensation in it for plaintiff. Under this policy plaintiff was guaranteed the average of the two highest appraisals. More, plaintiff was guaranteed this appraised value as the *net* proceeds on the sale of his home though it is within common knowledge that a seller of a home cannot hope to realize the gross sales price as his net return. Under such an arrangement, IBM might have to pay a premium price to insure plaintiff's move to Los Angeles. Indeed, as it turned out, the ultimate sales price was much less than the appraised price which was guaranteed and the latter was more than plaintiff's adjusted cost basis for determining gain or loss on the property. The knowledge that he was guaranteed such a favorable price was no little incentive to go along as his employer wanted. There is no valid basis for treating this reimbursement as a return of capital and excluding it from regular income.

■■■■ Viewing this case in its simplest terms, the thrust of it is that plaintiff by reason of his employment was required to move, that he sustained expenses and losses for which he was largely but not altogether made whole through the generosity and good business and personnel policies of his employer—but that if he has to pay a tax on these reimbursements as ordinary income his true income is distorted and he is made poorer because of the move for his employer's benefit. The term income, however, is a broad concept which includes any economic gain from whatever source,[7] and deductions and exclusions from it are specifically defined and must be strictly construed. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 69 S. Ct. 358, 93 L.Ed. 477 (1949); Commissioner of Internal Revenue v. Glenshaw Glass Co., supra; Commissioner of Internal Revenue v. Smith, supra; Commissioner of Internal Revenue v. Lo Bue, supra. Economic gain does not necessarily require profit in its usual sense. United States v. Woodall, supra.

■■■ Since taxable income is a statutory term and taxation does not profess to embody perfect economic theory, Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720 (1929), nor to be based on implications or logic, *Cockrell,* supra, or equity, *Woodall,* supra, the relief in a situation such as here cannot be judicial but depends on legislative grace within the exclusive province of Congress[8] which alone can create deductions or exclusions from income as it has defined it in the statute in issue here. Int. Rev. Code of 1954, § 61, supra; United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955).

DAVIS, Judge (concurring in part and dissenting in part):

I can pick my way through this stony field only by looking for the separate paths open to judges, on the one side, and to legislatures and administrators, on the other. Confronted with broad concepts in a statute, a judge has much greater

---

7. See generally 1 MERTENS, FEDERAL INCOME TAXATION § 5.03 (1962).

8. Indeed, in the consideration of the Revenue Act of 1964, the House refused to accept a Senate provision which would treat part of such reimbursements as an additional amount realized from the sale of the home. However, nonaction by Congress or the refusal of Congress to enact a particular provision affords the most dubious foundation for drawing inferences as to the intent of an earlier Congress. United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); United States v. Wise, 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); United States v. Philadelphia National Bank, 374 U.S. 321, 349, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). The enactment of a new code section does not necessarily indicate that the prior rule was to the contrary but only that it was unclear. United States v. Midland-Ross Corp., 381 U.S. 54, 60, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965). Thus, congressional failure to enact such a provision has no relevance in the determination of whether these reimbursements are taxable and has not been considered in our determination here.

difficulty and less authority in summarily drawing exact lines, based on practicality, than do legislators or those who are granted power to administer a regulatory or taxing system. My difficulty here as a judge is that, faced with the all-inclusive words of Section 61(a) of the 1954 Revenue Code, I can see no theoretical or principled difference between "direct" and "indirect" moving expenses.[1] Yet since 1954 the Internal Revenue Service has ruled that reimbursement for the former, and those alone, need not be included in gross income. Rev.Rul. 54–429, 1954–2 Cum.Bull. 53. Perhaps the IRS draws the authority to make this distinction, on pragmatic grounds, from its general regulatory power, or perhaps the ruling has to be accepted, in both its affirmative and its negative aspects, because of its age. Cf. United States v. Correll, 389 U.S. 299, 304–307, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). Certainly Congress could make the separation if it wished, but it did not do so for the taxable year with which we are concerned. With only "indirect" moving expenses before us, the safest course for me, as a judge, is to apply § 61(a) without regard to the Revenue Ruling but under the guidance of Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S. Ct. 473, 99 L.Ed. 483 (1955), and Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956). In the light of the great scope of § 61(a), as indicated in those and comparable decisions, I concur with the court that the reimbursement for "indirect" moving expenses was includable in taxpayer's gross income, probably as part of his "compensation for services, including fees, commissions, and similar items."

I part company, however, on the deductibility of these expenses. The Tax Court, *en banc* (with three dissents), has recently ruled that, in almost identical circumstances, an employee-taxpayer can deduct his "direct" moving expenses as ordinary and necessary business expenses. Edward N. Wilson, 49 T.C. 406 decided Jan. 24, 1968; see, also, Vaal R. Dodd, P-H Memo T.C. ¶ 68,023, decided February 6, 1968. I agree with that view. Since I can make no distinction, as a judge, between "direct" and "indirect" moving expenses, and since, in the area of the deductibility of such expenses there is no precise statutory or administrative guidance, I must apply the rule of the Tax Court's *Wilson* case to the present taxpayer's "indirect" costs.

On the other aspect of the case, the "home guaranty payment", I agree with the court. Like the reimbursement for moving expenses, this payment appears to be "gross income" under § 61(a) as interpreted by the Supreme Court. Chief Commissioner Bennett's opinion rightly points out that a payment of this kind is not part of the proceeds of a capital asset and is not a return of capital. The remaining question is whether taxpayer is entitled to a deduction on account of the reimbursed house-loss. In Edward N. Wilson, supra, the unanimous Tax Court held, in the same opinion which upheld the deductibility of "direct" moving expenses, that a similar "loss from the sale of a personal residence does not constitute a capital loss", and also that the loss was not a deductible business expense. I accept that position and therefore concur on this point with our court which rules the same way in this case.

SKELTON, Judge (concurring in part and dissenting in part):

I join in the concurring and dissenting opinion of Judge Davis, except I would limit the "indirect costs" as deductible items to those costs which were reason-

---

1. It is said that "direct" moving expenses are not subject to personal choice, but we all know of the great fluctuations in the forms and expense of moving household goods as well as the variations in modes and cost of transporting families.

The small difference, in this respect, between "direct" and "indirect" expenses seems to me not the kind of distinction judges can find in a statute as broad and general as § 61(a).

able expenses of the move. Of course, these costs will vary with the facts of each case, depending on the circumstances of the taxpayer and his station in life. Applying this rule to this case, I would hold that the only deductible "indirect costs" which appear to be reasonable as moving expenses are:

| | |
|---|---|
| Remaking and rehanging draperies | $245.00 |
| Installation of carpeting | 138.82 |
| Total | 383.82 |

Of course the interest and taxes on the Mill Valley residence in the sum of $289.08 are deductible as such instead of moving expenses.

I would enter judgment according to this opinion.