BALDWIN, Circuit Judge.
 

 These consolidated cases are before the court on appeal from a judgment of the United States Claims Court
 
 [1]
 
 denying a claim for refunds of income taxes and interest paid pursuant to deficiency notices issued, respectively, against Elvia and Leone McCann, relating to calendar year 1973, and
 
 *1387
 
 against Vertie Graves for calendar year 1975. We affirm.
 

 Background
 

 During the pertinent time period, Mrs. McCann and Ms. Graves (the agents) were employed by Security Industrial Insurance Company (Security), a Louisiana corporation which sells various kinds of insurance policies. Security’s agents sell the policies and collect premiums personally, in the homes of their customers.
 

 Security has, since 1950, sponsored what are called “sales seminars” for all its agents and managers who achieve a specified net increase in sales over the preceding year. In recent years, such seminars have been held in Miami Beach, New York City, San Francisco, and Houston. Security pays all the costs for the agents and managers to attend these seminars. Additionally, by surpassing even higher stipulated net increases in sales, an agent or manager may bring along one or more companions on the trip, again at Security’s expense.
 

 In 1973, Mrs. McCann and her husband, Elvia, attended a seminar in Las Vegas, Nevada, while in 1975 Ms. Graves traveled to Mexico City with her granddaughter for a seminar there. Neither the McCann’s 1973 joint income tax return nor Ms. Graves’ 1975 return included in gross income any amount related to these trips. However, after an audit, the Internal Revenue Service (IRS) decided that the fair market value of the trips constituted gross income, and issued the deficiency notices that were the genesis of the present litigation.
 

 Proceedings Below
 

 The trial judge concluded that the trips were an economic benefit to qualifying agents and, hence, represented compensation for services rendered during the preceding year. Accordingly, he held that the fair market value of each trip was properly categorized as gross income within the meaning of 26 U.S.C. § 61(a).
 
 [2]
 
 In addition, the trial judge stated that each trip was an “award given by Security * * * for a job well done, and, therefore, constituted * * * gross income under” 26 U.S.C. § 74(a).
 
 [3]
 

 Having classified the fair market value of the trips as gross income, the trial judge then considered whether the McCanns and Ms. Graves were entitled to an offsetting deduction under 26 U.S.C. § 162(a).
 
 [4]
 
 The trial judge found that the trips were primarily for pleasure, in the nature of a vacation for the qualifying agents, who, consequently, could not deduct the cost of the trips as an ordinary and necessary business expense.
 

 DISCUSSION
 

 Analytic Approach
 

 As the trial judge’s opinion suggests, characterization of the agents’ activities as
 
 *1388
 
 sociated with the expense-paid trips is crucial to the disposition of this case. In particular, the trial judge’s findings of fact concerning the nature of the seminars and related expenses is directly relevant both to whether the agents realized gross income and to whether such income, if realized, is subject to an offsetting deduction.
 
 See United States v. Disney,
 
 413 F.2d 783, 786 (CA 9 1969). Thus, if Security’s seminar-related costs were deemed the expenses of legitimate business activities by the agents, then they would be analogous to reimbursements by an employer to an employee for business expenses incurred by the latter and, consequently, would not be considered as income to the agents.
 
 See Ireland v. United States,
 
 621 F.2d 731, 735-36 (CA 5 1980);
 
 United States
 
 v.
 
 Gotcher,
 
 401 F.2d 118, 122-23 (CA 5 1968). Conversely, if Security’s costs were not related to seminar activities primarily of a business nature, they would be likened to employer reimbursements of an employee’s personal expenditures and, therefore, would be treated as income to the agents, even if they were causally connected with furthering Security’s own business interests.
 
 See Ritter v. United States,
 
 393 F.2d 823, 829, 183 Ct.Cl. 875 (Ct.Cl.1968).
 

 By the same token, distinguishing the incurred costs of the seminars as either the business or personal expenses of the agents has a direct bearing on the deductibility of those costs, since a taxpayer seeking a deduction under § 162 must show that her expenses were business-related, rather than personal, as well as both ordinary and necessary.
 
 [5]
 
 Accordingly, if the seminar-generated expenses were treated like reimbursements for personal expenditures, following the approach detailed above, then it follows that they would be regarded as income to the agents not subject to a deduction under § 162(a).
 

 Analysis
 

 We are in basic agreement with the trial judge that the trips to Las Vegas and Mexico City, respectively, were in the nature of vacations, rather than business trips, for the agents. As the trial judge emphasized in his opinion, each agent qualified for a trip only after exceeding, by a specified amount, her net sales for the preceding year. Finding herself amongst the relative few qualifying for a trip,
 
 [6]
 
 an agent was not required to attend the seminar, her promotional opportunities being unaffected by her choice not to attend.
 
 Compare United States v. Disney,
 
 413 F.2d at 787,
 
 and United States v. Gotcher,
 
 401 F.2d at 123,
 
 with Fenstermaker v. Commissioner,
 
 37 T.C.M. (CCH) 898, 904 (1978). On the other hand, by doubling or tripling her net sales over the prior year’s, an agent became entitled to bring along on the trip, in addition to a spouse, one or two guest couples. These features of Security’s seminar program collectively undercut the agents’ argument that the seminars were for training purposes only.
 

 To substantiate their assertion that the costs of the trips were incurred in the service of their legitimate business activities, and were, therefore, bona fide business expenses, the agents rely heavily on testimony by E.J. Ourso, Security’s president, who tes-, tified that the trips in fact were crucial morale builders, that they counteracted a high turnover rate amongst Security agents, and that they were required “to expand the distances between their [the agent’s] ears.” Mr. Ourso further stated that:
 

 I could educate [the agents] as to the skills of the jobs, but I had to make them see above bread and beans on the table. I had to build them up so that they — you know, there are other ways to spend your money. * * * I can’t go to Churchpoint, Louisiana, etc., and explain to people that
 
 *1389
 
 there are nice places in New York and that people spend their money on different things. They like to eat well, dress well, see things, travel, exposure. Once those people tasted of those things, seeing people you know, shows and how people spend their money on clothes, they get a lot of gratification out of that. They learn about exposure, education of kids and all. At the same time while making money to do so, I have to build those people’s self esteem, self image so that they would want to make more money to do the things that educated people learn. I could not stay in Louisiana and do it.
 

 Far from supporting the agents’ position on appeal, Mr. Ourso’s testimony only reinforces the impression that the trips were primarily personal in nature, representing opportunities for agents and their spouses to “eat well, dress well, see things,” to see “how people spend their money on clothes,” and to “get a lot of gratification out of that.” From Mr. Ourso’s perspective, such experiences may be necessary to building a highly motivated sales force. However, we cannot, based on his observations, fault the trial judge’s holding that Security effectively underwrote what would have otherwise been a personal expenditure by the agents.
 

 Therefore, pursuant to the approach previously outlined, we conclude that the fair market value of the trips constituted nondeductible gross income to the agents. Since the agents made no attempt to demonstrate that specific seminar activities were, in fact, directly related to their business, so that expenses properly allocable to those activities might be excluded from the agents’ gross income, the trial judge did not err in denying them any recovery on this record.
 
 Cf. Cohan
 
 v.
 
 Commissioner,
 
 39 F.2d 540 (CA 2 1930) (when considering a possibly deductible expense, the exact amount of which is problematic on the evidence, the court “should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making”).
 

 Therefore, the decision of the trial judge is
 
 affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Pursuant to the order of this court dated October 4, 1982, Chief Judge Kozinski entered a judgment on October 8, 1982, corresponding to the decision recommended in this case.
 

 [2]
 

 . 26 U.S.C. § 61(a) (1954) states in relevant part that:
 

 Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 

 (1) Compensation for services, including fees, commissions, and similar items; ******
 

 [3]
 

 . 26 U.S.C. § 74 (1954) provides as follows:
 

 (a)
 
 General Rule.
 
 — Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.
 

 (b)
 
 Exception.
 
 — Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—
 

 (1) the recipient was selected without any action on his part to enter the contest or proceeding; and
 

 (2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.
 

 [4]
 

 . 26 U.S.C. § 162(a) (1954) provides in relevant part that:
 

 There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
 

 ******
 

 (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;
 

 ******
 

 [5]
 

 . 26 U.S.C. § 262 (1954) states that: “Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.”
 

 [6]
 

 . While the parties are in dispute over the precise numbers involved, the percentage of Security’s agents qualifying to travel to a seminar was apparently less than 29% in 1973, and less than 13% in 1975.