HARRIS W. BRADLEY AND PATRICIA G. BRADLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91639. Filed January 10, 1963.

*Carle E. Davis, Esq.*, for the petitioners.
*Douglas O. Tice, Jr., Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in income tax against petitioners in the amount of $1,955.56 for the year 1958.

The issue presented is whether payment by petitioner's employer to petitioner in the amount of $5,000 in 1958, pursuant to employer's voluntary guarantee against loss by petitioner on the sale of his property, was incentive compensation or part of the proceeds of the sale of said property.

### FINDINGS OF FACT.

Some of the facts are stipulated and are included herein by reference.

Petitioners, Harris W. Bradley and Patricia G. Bradley, are husband and wife. They filed a joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at Richmond, Va.

On May 1, 1957, Harris W. Bradley (hereinafter referred to as petitioner) commenced new employment as vice president and technical director of the E. R. Carpenter Co., Inc. (hereinafter referred to as the Carpenter Co.), in Richmond, Va. Prior to this time, petitioner had been employed by E. I. du Pont de Nemours and Co., Inc., in Wilmington, Del. Petitioner had negotiated for his employment with the Carpenter Co. in April 1957, with E. R. Carpenter, president of petitioner's new employer. In his duties with the Carpenter Co., petitioner was to assume chief responsibility for the chemistry and technology of urethane foam, a new product that the Carpenter Co.

was planning to make. The job was difficult and had never before been done by any company in the United States. Petitioner was to be paid a salary of $15,000 per year.

At the time petitioner accepted employment with the Carpenter Co., petitioner and his wife owned real property at 12 Corrine Court in Wilmington, Del. This property consisted of petitioners' personal residence and a garage apartment which they rented to other persons.

There was a general understanding at the time petitioner accepted his employment with the Carpenter Co. that petitioner would move his residence from Wilmington to Richmond. After petitioner had accepted employment with the Carpenter Co. in April 1957, petitioners turned their Wilmington property over to a real estate agent for sale. Although petitioner began work with the Carpenter Co. in Richmond on May 1, 1957, it was decided that his family would remain in Wilmington until the property was sold.

Petitioners' efforts to sell their Wilmington property were not immediately successful. They had been advised by realtors that the value of the property was from $22,000 to $24,000. No offers to purchase were made within the range for which the property had been appraised and at which petitioners expected to sell.

Petitioner was concerned about not being able to sell his Wilmington residence and bring his family to Richmond. While his family remained in Wilmington, petitioner stayed in a room in his parents' home some 20 or 25 miles outside Richmond, and he went home to Wilmington on weekends. His employer, Carpenter, was aware of petitioner's difficulty in selling his Wilmington property. Carpenter was also aware of petitioner's concern over not being able to sell.

During this period the urethane foam project, for which petitioner had been hired as a keyman, was not going as well as Carpenter had expected. Carpenter felt that the fact that petitioner's family was in Wilmington and that petitioner was going back and forth between Richmond and Wilmington on weekends might be preventing petitioner's making a maximum contribution to the project. Therefore, in order to relieve petitioner's anxiety over his unsold Wilmington residence, Carpenter, at a time about 2 months after petitioner began his employment with the Carpenter Co., guaranteed on behalf of the Carpenter Co. that petitioner would receive $23,500 on the sale of his Wilmington property. It was agreed that the Carpenter Co. would fulfill its guarantee by reimbursing petitioner for the difference between the price guaranteed and the actual sale price of the property when it was sold.

On March 18, 1958, petitioners sold their Wilmington property for $18,500. Petitioners' adjusted basis in this real property at the time

of the sale was $24,998.88. Petitioners paid a realtor's commission on the sale of $925.

On April 1, 1958, petitioner received a payment of $5,000 from the Carpenter Co. which payment was made pursuant to the company's guarantee.

OPINION.

We see no occasion to summarize the facts set forth in our findings. We think it clear that the basis of the Carpenter Co. guarantee of a sales price of $23,500 for petitioner's property, and the ultimate payment of $5,000 to petitioner, was incentive compensation to relieve petitioner's anxiety over the problem of the sale of the property and to encourage petitioner, a keyman, to make his maximum contribution to the success of a difficult project which was not getting along as well as expected.

We think the principles announced in *Commissioner* v. *Lo Bue*, 351 U.S. 243 (1956), while arising in a somewhat different factual setting, are equally applicable here. The Supreme Court said, in part, at page 247:

When assets are transferred by an employer to an employee to secure better services they are plainly compensation. It makes no difference that the compensation is paid in stock rather than in money. Section 22(a) taxes income derived from compensation "in whatever form paid." And in another stock option case we said that § 22(a) "is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S. Ct. 591, 593, 89 L. Ed. 830. *Lo Bue received a very substantial economic and financial benefit from his employer prompted by the employer's desire to get better work from him. This is "compensation for personal service" within the meaning of* § 22(a). [Emphasis supplied.]

Petitioner contends, however, that the $5,000 payment was not compensation, but was a part of the proceeds of the sale of the property. In support of this view, he relies upon *Otto Sorg Schairer*, 9 T.C. 549 (1947), and argues that our opinion in that case is directly in point. Frankly, we find no practical distinction between *Schairer*, and the instant case. *Schairer*, however, was decided in 1947. In the meantime, the complexion of the law has materially changed on the subject of what is and what is not compensation. See *Commissioner* v. *Lo Bue*, *supra*, and, from another perspective, but significant here in principle, *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960).

Careful examination of the principles announced in these two cases leaves no doubt in our minds that the $5,000 in issue must be treated as compensation.

Under the circumstances, we must decline to follow *Schairer*, Cf. *Arthur J. Kobacker*, 37 T.C. 882, 897 (1962).

For completeness, we add that petitioner does not argue that the payment was a gift. Had he done so, we could not accept his view.

On the basis of the foregoing discussion, we must find for respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

BRUCE, *J.*, concurring: I concur in the result reached by the Court that the $5,000 payment made to petitioner by the E. R. Carpenter Co. in 1953 represented taxable income to him. In my opinion, however, the present case is distinguishable from *Otto Sorg Schairer*, 9 T.C. 549, and it is therefore unnecessary to disavow the Court's holding in that case. Unlike the *Schairer* case, the petitioner here was a new employee, and although the payment in question was made approximately 2 months after the initial arrangements for his employment, I think it may reasonably be considered as additional compensation, over and above his fixed salary, to secure the immediate availability of his services at all times at the place of his new employment. In other words, I regard the agreement of the Carpenter Co. to reimburse petitioner for the difference between the guaranteed price and the actual sale price of his house as an amendment to his original contract of employment and accordingly the $5,000 payment represents compensation for services rendered or to be rendered. Cf. *Arthur J. Kobacker*, 37 T.C. 882, 896, 897, and cases cited therein.

---

FAY, *J.*, concurring: I concur in the result reached by the Court that the $5,000 paid to petitioner in 1953 represented taxable income to petitioner. Under the facts in this case I believe that the $5,000 payment was paid to and received by petitioner as compensation. In my opinion, the case of *Otto Sorg Schairer*, 9 T.C. 549, is distinguishable from the instant case; and, therefore, I believe that it is unnecessary to overrule the Court's holding in that case. Cf. *Arthur J. Kobacker*, 37 T.C. 882, 896, 897.

---

DRENNEN, *J.*, dissenting: The majority opinion, in declining to follow this Court's decision in *Otto Sorg Schairer*, 9 T.C. 549 (1947), appears to disavow the principle relied upon therein that where the payment was found to be a part of the sale transaction it is taxable as a capital transaction rather than as compensation for services rendered. If such be the import of this case, I must disagree. Where the payment is dependent entirely on the outcome of the employee's capital transaction and is intended only as a guarantee against loss of the employee's capital, and is not intended as additional compen-

sation, I do not think either the statute or the principles announced in *Commissioner* v. *Lo Bue*, 351 U.S. 243 (1956), and *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960), require that it be taxed as compensation. I think the reasoning of this Court in *Otto Sorg Schairer*, *supra*, is sound under the present complexion of the law as it was when that case was decided. I would not overrule it.

RAUM, *J.*, agrees with this dissent.

---

DAWSON, *J.*, dissenting: I cannot agree with the majority opinion. I think the decision in *Otto Sorg Schairer*, 9 T.C. 549 (1947), was sound on its facts. I would follow it here.

As in *Schairer*, this petitioner's employer agreed to guarantee him against any loss on the sale of his residence because the Carpenter Co. wanted the petitioner to live in Richmond where he would devote his full energy to his job. Petitioner was directed by his employer to relocate promptly in Richmond. He put his Wilmington house on the market but received no offer equal to his cost. Carpenter told him to get the best offer he could and, if it did not equal his cost, the Carpenter Co. would make up the difference. It seems clear to me that the principal purpose of the guarantee agreement was to prevent the petitioner from suffering a loss because of his employer's requirements. All the petitioner realized was the recovery of his cost. Consequently, I do not see how it can be held under these circumstances that he received any economic or financial benefit *conferred on him as compensation* within the general principles stated in *Commissioner* v. *Lo Bue*, 351 U.S. 243 (1956), and *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960).

I would adhere to the long standing decision in *Schairer* and treat the amount paid by the Carpenter Co. as part of the proceeds of sale pursuant to section 1001(b) of the Internal Revenue Code of 1954. In my opinion this would provide a better legal result and certainly an equitable one.

RAUM, *J.*, agrees with this dissent.