HOMER H. STARR AND MINNIDELL M. STARR, PETITIONERS, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 342–65. Filed September 26, 1966.

Homer H. Starr, for the petitioners.
*Roger A. Pott*, for the respondent.

OPINION

FAY, *Judge:* Respondent determined a deficiency in petitioners'
Federal income tax for the year 1962 in the amount of $185.48.

The issues presented for decision are: (1) Whether the reimburse-
ment received by Homer H. Starr (hereinafter referred to as peti-
tioner) from his employer, for living expenses incurred subsequent
to his arrival at his new post of duty, was includable in petitioner's
gross income under section 61(a) of the Internal Revenue Code of
1954;[1] and (2) if so, whether the various expenditures of petitioner
were deductible as ordinary and necessary business expenses within
the meaning of section 162.[2]

All of the facts have been stipulated, and the stipulation of facts,
together with the exhibits attached thereto, is incorporated herein by
this reference.

Petitioner and Minnidell M. Starr, husband and wife, were residents
of Lander, Wyo. They filed a joint income tax return for the year
1962 on the cash basis with the district director of internal revenue,
Cheyenne, Wyo.

Petitioner had been employed continuously by the U.S. Steel Corp.
(hereinafter referred to as U.S. Steel) from April 1937 to December 1,
1961, in various capacities and at various locations. On December 1,
1961, he was permanently transferred by U.S. Steel from his duty post
at San Francisco, Calif., to a new post near Lander, Wyo., where his
employer had recently constructed a new plant. Petitioner arrived
in Lander on December 4, 1961. The transfer was not requested by
petitioner but was made solely at the behest of his employer. In fact,
the transfer involved a demotion in petitioner's salary grade level,
resulting in an annual salary reduction of approximately $3,300.

[1] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income
means all income from whatever source derived * * *

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of
1954.

Upon his arrival in Lander, petitioner began to look for a residence for himself and his family. Because of the construction of the new steel plant and the transfer of many employees to the new location, there existed a significant housing shortage. On or about December 20, 1961, petitioner entered into a contract to purchase a family residence. This residence was unavailable for occupancy until January 20, 1962. Petitioner did not actually move into the residence until January 29, 1962.

From the time of his arrival on December 4, 1961, and for some 43 days thereafter, petitioner resided at the Noble Hotel in Lander while his family remained in California.

Petitioner, from his own funds, continued to pay the rent and maintenance of his family in California during the months of December 1961 and January 1962. The payments represented the normal cost of petitioner's maintaining his family except for the reduction in costs occasioned by his absence. Petitioner was not reimbursed by his employer for any part of these expenditures.

In addition to certain amounts not here relevant, petitioner was reimbursed by his employer for his own meals, lodging, and incidental expenses while at Lander prior to the arrival of his family. The reimbursement totaled $718.54.

Petitioner did not include any part of this amount in his gross income for the taxable year 1962. Respondent in his statutory notice of deficiency determined that such amount was properly includable in gross income under section 61(a) and that the expenditures were not allowable as deductions because of the provisions of section 262.[3]

The first issue for determination is whether the amount of the reimbursement should be included in petitioner's gross income. Petitioner maintains that the reimbursement was for expenditures incurred primarily in the interest of his employer and, therefore, was not compensatory in nature. Respondent, on the other hand, contends that the concept "interest of the employer" does not extend beyond actual transportation costs (direct moving expenses). He concludes that, because the reimbursement in the present case was for postarrival expenses (indirect moving expenses), the amount of the reimbursement is includable in gross income under section 61(a).

We agree with petitioner.

Though it is no longer open to serious question that the concept of "gross income" embodied in section 61(a) is "all inclusive," *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426, 432 (1955), it is a well-established principle that a reimbursement of costs incurred by an existing employee primarily for the benefit of the employer is not

---

[3] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

compensatory in nature and is excludable from the employee's gross income. *John E. Cavanagh*, 36 T.C. 300 (1961).[4] More precisely, therefore, the question before us centers on the limits of the concept "interest or benefit of the employer."

It is necessary, in order to define these limits, to consider the development of the law in the areas of employees' moving expenses and their reimbursement by the employer. Prior to the enactment by Congress of section 217, which allowed a deduction for direct moving expenses incurred after December 31, 1963, it had been consistently held that all moving expenses, direct or indirect, were nondeductible, personal expenses under section 262. See *Koons* v. *United States*, 315 F. 2d 542 (C.A. 9, 1963); *Light* v. *Commissioner*, 310 F. 2d 716 (C.A. 5, 1962), affirming per curiam a Memorandum Opinion of this Court; and *United States* v. *Woodall*, 255 F. 2d 370 (C.A. 10, 1958). If, however, direct moving expenses were reimbursed by the employer, the reimbursement was held not to be includable in the income of the employee on the rationale that the expenses were incurred primarily in the interest of the employer. *John E. Cavanagh, supra.* From the status of the law in the area, it is obvious that the criteria used to determine whether a reimbursement is compensatory are in no way dependent upon considerations relevant to the issue of the deductibility of the expense by the employee. See statement of existing law in H. Rept. No. 749, 88th Cong., 1st Sess., pp. 58–59 (1963), 1964–1 C.B. (Part 2) 125, 182–183.

The Internal Revenue Service in Rev. Rul. 65–158, 1965–1 C.B. 34, and Rev. Rul. 54–429, 1954–2 C.B. 53, takes the position that the exclusion of reimbursed expenses from gross income is limited to the reimbursement of costs for the actual transportation of the employee, his family, his personal and household effects, and his meals and lodging en route. This Court has also allowed the exclusion in the case of extraordinary living costs incurred by the employee after his arrival at the new post of duty. *John E. Cavanagh, supra.* Congress took note of this confusion with reference to the excludability of moving expense reimbursement in its investigation of the area relevant to the enactment of section 217. It was concluded that, while the deduction for moving expenses allowed under section 217 would be limited to the present Internal Revenue Service categories—

No inference should be drawn from this, however, that moving expense exclusions under existing law are necessarily limited to these * * * categories * * *. The question of whether the exclusion for existing employees extends beyond these * * * categories is left for judicial interpretation. [H. Rept. No. 749, *supra* at 59; S. Rept. No. 830, 88th Cong., 2d Sess., pp. 71–72 (1964), 1964–1 C.B. (Part 2) 505, 575–576]

---

[4] This position has long been conceded by the Commissioner. See Rev. Rul. 65–158, dealing with sec. 61(a), 1965–1 C.B. 34; and Rev. Rul. 54–429, dealing with sec. 22(a), I.R.C. 1939, 1954–2 C.B. 53.

In keeping with the intent of Congress, herein expressed, we must determine, in these situations, what is "the interest of the employer" which will merit an exclusion from gross income of the amount of reimbursed moving expenses.

The present Service dichotomy between a reimbursement for direct moving expenses (excludable) and for indirect moving expenses (includable), viewed in relation to determining the interest of the employer, is the result of an administrative determination and not of any innate logical distinction between them. The respondent supports this distinction by reliance on the following propositions: (1) That to look into the facts of each case would be too heavy an administrative and judicial burden and (2) that the indirect expenses depend upon the employee's personal taste and the employer's generosity, so that, even though incurred solely as a result of a transfer required by the employer, the expenses cannot be regarded as primarily for the employer's benefit. With reference to the former ground, the fact that an inquiry into the circumstances of each case will be more demanding on both respondent and the judiciary, though perhaps relevant, is not decisive. The latter ground is a conclusion the basic presupposition of which must be carefully considered. Respondent contends that the indirect expenses were not incurred primarily for the benefit of the employer because they depend upon the employee's personal taste and the largess of the employer. This rationale would seem to be more appropriate to a discussion of the reasonableness of the amount of the expenditure rather than to the preliminary determination of the nature of the expense. The enticing simplicity of respondent's statement is also misleading in that it connotes an employer underwriting the whims of its employees whenever their presence is required at a new jobsite. Such a "picture" does not square with reality. In the current business market, the mobility of skilled labor is a business necessity. The expansion of business into new geographical areas requires the ready availability of a skilled and mobile labor force. It is to insure such availability that many employers have adopted a policy of reimbursement for expenses incurred in connection with an existing employee's transfer to a new duty post.

Respondent concedes that direct moving expenses inure primarily to the benefit of the employer. It is our opinion that his unqualified statement that indirect moving expenses cannot, under any circumstances, be said also to inure primarily to the benefit of the employer, ignores the economic realities of the situation. The fact that petitioner was forced, due to a housing shortage, to accept temporary quarters for himself in Lander, while maintaining his family in California, can hardly be said to be the result of petitioner's personal preference or taste. In addition, the fact that numerous employers, as a matter

of course, reimburse such expenses adds credence to the conclusion that such expenses are incurred primarily for their benefit.

In a situation where the transfer of an existing employee is solely at the behest of the employer and where the cause of the temporary expenditure is outside the control of the employee, the expenses are incurred primarily for the benefit of the employer. In such a case, the concept of the "interest of the employer" covers those costs which are actually incurred to effect the change in location, including those temporary living costs directly related to and caused by the circumstances in existence at the new post of duty. In so holding, we do not feel that we have opened an avenue for unwarranted advantage. In this regard, it should be noted that the case before us is that of an ordinary corporate employee, in a large publicly owned corporation, who was transferred to a new plant in a community which did not possess adequate housing to meet the demands of its recent industrial growth. It involves an employee who acquired and occupied permanent quarters at the earliest possible time. The record reveals that the petitioner received reimbursement for expenses incurred over a period of less than 2 months, during which time permanent quarters were unavailable. There is no question before us involving the reasonableness and necessity of the amount of the expenditures.

In reaching our determination, namely, that the reimbursement was not includable in petitioner's gross income, we do not feel that we are in conflict with the authorities relied on by respondent, with the exception of the case of *England* v. *United States*, 345 F. 2d 414 (C.A. 7, 1965), certiorari denied 382 U.S. 986 (1965). Respondent relies on the decisions in *United States* v. *Woodall*, *supra*, and *Koons* v. *United States*, *supra*, both of which held that a reimbursement to a *newly hired* employee for *direct* expenses incurred in the transportation of such employee to his new post of duty was includable in his gross income. The rationale of the Tenth Circuit in *United States* v. *Woodall*, *supra* at 372, was that in the case of a newly hired employee the payment of *even direct moving expenses* "was in the nature of a cash bonus as an inducement to accept employment." This rationale is without application to the present situation which involves an existing ("old") employee. See *John E. Cavanagh*, *supra*. Respondent also relies on *Light* v. *Commissioner*, *supra;* and *Commissioner* v. *Mendel*, 351 F. 2d 580 (C.A. 4, 1965), reversing and remanding 41 T.C. 32 (1963). Both of these cases dealt solely with the availability of a deduction to the employee. We pointed out earlier in this opinion that the criteria for allowing a deduction are not relevant to the issue of whether the reimbursement of such expenses is to be included in gross income.

Finally, respondent cites *England* v. *United States, supra.* In that case, on facts sufficiently similar, but extending beyond those before us,[5] the Seventh Circuit held that the position of the Internal Revenue Service, limiting exclusions from gross income to reimbursements for direct moving expenses, was a permissible interpretation of the Internal Revenue Code's definition of gross income. The Court of Appeals stated at page 416 that "the costs of meals, lodgings, and expenses incidental to securing housing at the post are personal living expenses of the employee, and if they are provided by the employer, income is realized thereby." The court concluded by stating that the decision of the Eighth Circuit in the case of *Cockrell* v. *Commissioner*, 321 F. 2d 504 (C.A. 8, 1963), affirming 38 T.C. 470 (1962), had already resolved the gross income question in favor of the Internal Revenue Service. In *Cockrell* both this Court and the Eighth Circuit confined their rationale to the question of the availability of a deduction, though they did nominally dispose of the gross income issue. An extended discussion of the gross income issue was unnecessary because the taxpayer in the *Cockrell* case appeared to concede the issue except on the very limited ground that it was excludable under the Armed Services Procurement Regulations. In disposing of the issue, the *Cockrell* opinion merely notes the opinion of this Court in *Darrell Spear Courtney*, 32 T.C. 334, 341 (1959), where, by way of dicta, we made the general observation that "A cash allowance for food, lodging, and similar items, in addition to wages, is income."

It is our opinion that in none of the cases relied on by the Seventh Circuit in the *England* case did the respective courts have an opportunity to consider fully this precise issue. We must, therefore, disagree with the conclusion reached in the *England* case that these earlier determinations precluded further consideration of the issue. With all due deference to the Seventh Circuit's decision in the *England* case, we feel that the better view is that expenses, incurred by an employee after arrival at the new post of duty, may, as under the present circumstances, represent amounts paid by the employee primarily on behalf of, or in the interest of, his employer. See *John E. Cavanagh, supra.* Consequently, we hold that on the record before us, the reimbursement of petitioner's postarrival expenditures was excludable from his gross income.

In light of our holding that these reimbursements were properly excludable from gross income, we find it unnecessary to consider the

---

[5] In addition to the employee's meals, lodgings, and sundries while awaiting permanent quarters, he also received reimbursement for the costs incurred for a trip by his wife to inspect the new residence, the cost of a title search, revenue stamps, advertisements and telegrams regarding the sale of the prior residence, and the cost of boarding of the employee's dog and cat.

issue of the deductibility of the expenses by the employee.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

HOYT, *J.*, dissents.

———

DAWSON, *J.*, concurring: I concur in the result reached in the majority opinion. However, I would decide the case for the petitioner solely on the issue of deductibility. Granted that the concepts of "home" are mixed and sometimes confusing, it seems to me that this petitioner should be permitted, under these particular facts and circumstances, to deduct his expenses for meals and lodging at Lander. See secs. 62(2)(B) and 162 (a)(2), I.R.C. 1954. I would treat San Francisco as his "home" during the short period of time (December and January) that his family remained there and allow him to deduct his "away from home" expenses at Lander. I think this is justified primarily because the petitioner incurred during those 2 months substantial continuing and duplicitous living expenses at his permanent place of residence, i.e., San Francisco. Cf. *James* v. *United States*, 308 F. 2d 204 (C.A. 9, 1962).

———

SCOTT, *J.*, dissenting: I disagree with the conclusion of the majority that the facts in the present case bring it within the principle of *John E. Cavanagh*, 36 T.C. 300 (1961). That case involved reimbursement to the taxpayer of "his excess cost for food and lodging of his family while his household effects were in transit" which we referred to as "extraordinary expenses." The reimbursement to the taxpayer in the instant case was for his ordinary living expenses at Lander, his new post of duty. Ordinary living expenses of a taxpayer at a permanent place of employment, even though his family is living elsewhere, are personal expenses. In accordance with holdings in *Leo C. Cockrell*, 38 T.C. 470 (1962), affd. 321 F. 2d 504 (C.A. 8, 1963), and *Doyle* v. *Commissioner*, 354 F. 2d 480 (C.A. 9, 1966), affirming a Memorandum Opinion of this Court, I would hold that the reimbursement received by petitioner is includable in his taxable income. In my view, the instant case is indistinguishable from *Light* v. *Commissioner*, 310 F. 2d 716 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court. The majority opinion disposes of the *Light* case by stating that it is inapplicable in that it dealt with the availability of a deduction to the employee. The facts in *Light* v. *Commissioner*, *supra*, are that the taxpayer was transferred by his old employer from New Orleans to Newark, where he occupied a hotel room prior to moving his family to Newark. By prearrangement that taxpayer was reimbursed by his

employer "for the cost incurred for meals and rooms in Newark prior to being joined by his family, and for the hotel and meals for himself and his family for the few days between their arrival in Newark and their occupancy of a dwelling at that place." Although the *Light* case dealt with the deductibility of the cost incurred by the taxpayer for meals and lodging in Newark, that issue would not have arisen except for the inclusion by the taxpayer in his income of the amount of the reimbursement received from his employer. Technically the case dealt with a claimed deduction, but inherent in the decision is the conclusion that the reimbursement constituted income to the taxpayer.

However, even if the facts in the present case should be considered to bring this case within our holding in *John E. Cavanagh, supra,* I would nevertheless disagree with the conclusion reached by the majority. In my view we should accept and follow the circuit court's opinion in *England* v. *United States,* 345 F. 2d 414 (C.A. 7, 1965), certiorari denied 382 U.S. 986 (1965), holding *Cavanagh* to be incorrectly decided.

In *H. Willis Nichols, Jr.,* 13 T.C. 916 (1949), we held moving expenses for an old employee to be personal expenses. It follows that reimbursement of such personal expenses constitutes income. As pointed out in *Commissioner* v. *Mendel,* 351 F. 2d 580, 582 (C.A. 4, 1965), reversing 41 T.C. 32 (1963), "Ordinarily, reimbursement for moving expense to an existing employee would constitute gross income under the comprehensive definition in § 61(a) of the Revenue Code of 1954." but "Rev. Rul. 54–429, supra, [1954–2. C.B. 53] sought to alleviate the rigors of the application of the statutory definition of gross income to reimbursement for moving expenses to an existing employee." Whether the Commissioner should, by ruling, exclude from income that which by statute is includable therein, is not before us here, nor has it been before this Court or the other courts in other cases decided since Rev. Rul. 54–429, 1954–2 C.B. 53, became effective. The Commissioner has permitted the exclusion from income of reimbursement of moving costs in accordance with his ruling. Whether we approve of the ruling or not (see Judge Opper's concurring opinion in *Willis B. Ferebee,* 39 T.C. 801, 804 (1963), involving reimbursement of moving expenses to a new employee), the time has come to cease attempting to follow it to its logical conclusion in deciding cases involving claimed deductions or reimbursements to which it does not grant exclusion from income. In accordance with *Light* v. *Commissioner, supra,* and *England* v. *United States, supra,* I would hold that the reimbursement here in issue constitutes income to petitioner and that the amounts of the expenses for which the reimbursement was received are not deductible. Cf. *United States* v. *Woodall,* 255 F. 2d 370 (C.A. 10, 1958).

TIETJENS, BRUCE, PIERCE, and ATKINS, *JJ.,* agree with this dissent.