WILLIAM A. LULL AND HELEN M. LULL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WILLIAM H. SIMPSON AND DOROTHY SIMPSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2882–66, 3527–66. Filed February 26, 1969.

*Joseph H. Trethewey,* for the petitioners.
*Walter John Howard, Jr.,* for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax of the petitioners and additions to tax pursuant to section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations, as follows:

| Docket No. | Petitioners | Year | Deficiency | Addition to tax sec. 6653(a) |
|---|---|---|---|---|
| 2882–66 | William A. Lull and Helen M. Lull | 1960 | $3,350.78 | $167.54 |
|  |  | 1961 | 329.96 | 16.50 |
| 3527–66 | William H. Simpson and Dorothy Simpson | 1959 | 6,008.52 | 300.43 |
|  |  | 1961 | 2,724.67 | |

The cases were consolidated because of common issues involving the tax treatment of certain amounts received by each of the petitioners in reimbursement of moving and living expenses and for the difference between the sale price and the appraised value of his residence

when transferred by his employer from one place of employment to another.

Respondent has conceded the additions to tax and certain other issues have been settled by stipulation.

## FINDINGS OF FACT

The stipulation of facts and the exhibits attached to the stipulation are incorporated by this reference.

William A. Lull and Helen M. Lull are husband and wife. They resided in Seattle, Wash., at the time their petition was filed. They filed joint Federal income tax returns for the calendar year 1960 with the district director of internal revenue at Los Angeles, Calif., and for the year 1961 with the district director of internal revenue at Tacoma, Wash.

William H. Simpson and Dorothy Simpson are husband and wife. They resided at Mercer Island, Wash., at the time their petition was filed. They filed joint Federal income tax returns for the year 1959 with the district director of internal revenue at Los Angeles, and for the year 1961 with the district director of internal revenue at Tacoma, Wash.

William A. Lull and William H. Simpson were employed during the years 1957 through 1961 by International Business Machines Corp., herein referred to as IBM.

Lull has been employed by IBM as a salesman. In 1960 he was transferred by his employer from Honolulu, Hawaii, to Seattle, Wash.

Simpson was IBM's regional manager for industry and marketing for 11 Western States and resided in Los Angeles from January 1957 to February 1959. He was then transferred to New York as the divisional manager of advertising and promotion in the home office at White Plains, N.Y. In May 1961 he was transferred to Seattle as district manager for that office.

At the time of these transfers, IBM had a stated policy concerning reimbursement of expenses incurred by its employees in moving. The general scope of this policy was stated as follows:

### MOVING AND LIVING POLICY

*General.*—When an employee is transferred at the Company's request from one IBM location to another on a permanent basis, the Company will pay all normal expenses for moving household effects, expenses incurred while en route to the new location and living expenses as explained below.

The allowances for Moving and Living are divided in three basic areas:

I. Travel and Living Expense, including temporary living costs.

II. Moving Expense which covers the mover's charges and authorized miscellaneous expenses.

III. Home Guarantee Policy which covers authorized assistance in selling present home and purchasing new home.

The Moving and Living Policy will govern the transfer of all employees and, in addition, where applicable, the Home Guarantee Policy will govern the transfer of employees entering into the Home Guarantee and/or the Home Purchase Loan Agreements.

\*　　·　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

I. A. 2. *Living Advance.*—Upon arrival at the new location the employee may be granted an advance not exceeding a maximum of $200.00 for temporary living expenses. This advance is to take the form of a living advance in that it is to be accounted for on the final living expense account. When an employee has a living advance, all Moving and Living Expense Accounts submitted prior to the final living expense account are to be reimbursed in full. Except in unusual circumstances, no additional advance is to be made, and then only after settlement of the original advance.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

B. *Allowances for Travel Expenses.*—Travel Expenses will commence at the time of the employee's departure from his prior assignment. He should record all allowable expenses and retain supporting receipts during this period. Mileage at the current rate will be allowed for use of a personal car in traveling to the new location. Other means of transportation and allowable expenses as detailed in the Travel Expense section will also be authorized. Travel expenses will end as soon as the employee arrives at his new location.

C. '*Allowances for Living Expenses.*—When the first Moving and Living Expense Account is submitted, it is to include in the appropriate section under summary an estimate of the total number of weeks the employee will require Living Expenses for himself and for his family. This section is also to be completed on all future Moving and Living Expense Accounts indicating the original estimate and the present estimate.

Living expenses include meals, room, laundry, etc., incurred by the employee and his dependents at the new location prior to securing residence in accordance with the following time limits.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

## II. Moving Expenses

A. *General.*—Immediately upon notification of the transfer the employee is to secure a bid from a reputable national mover covering the moving of his personal household goods to the new location. It is not necessary to have a specific address but should indicate the general area in which he is to settle. In the case of intra-state transfers, two bids should be secured covering the physical move. Out of state moves require only one bid. The bid or bids are to be held and presented to the Manager at the new location who will authorize one of the bids.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

B. *Allowable Expense in Connection with Move.*—Listed below are the expenses that are allowable under the IBM Moving and Living Expense Policy. Items not listed as allowable will not be honored.

1. *Automobile Registration.*—Expense as a result of transferring an automobile registration from one state to another will be allowed on a net basis. Any refund from the previous state is to be deducted before computing the cost.

2. *Use of Personal Car.*—Mileage at the current rate will be allowed for use of a personal car in seeking a new residence.

3. *Auto Rental.*—If considered necessary, the use of a rented automobile will be allowed in seeking a new residence; however, each day's usage must have the prior approval of the Manager at the new location.

4. *Cleaning Services.*—Actual expenses for Domestic labor for purposes of

cleaning the old and new residence will be reimbursed to a maximum of $25.00 at each location.

5. *Arrangements for Disconnecting and Reconnecting Appliances.*—If the Mover arranges with a firm or mechanic to disconnect and reconnect home appliances in connection with the move, IBM will reimburse the Mover for completing the arrangements a fee up to 10% of the service charge of the firm or mechanic when such fee is charged by the Mover. This 10% maximum charge is payable only to the Mover and should be included on the Movers invoice as part of the contractual arrangements.

6. *Plumbing and Electrical Line for Appliances.*—IBM will allow expenses for the necessary labor and materials to connect major appliances in the new residence provided the necessary facilities are available within the house. Expenses to bring electrical powerlines, gas lines or water pipes from the street to the house are considered house improvements and will not be allowed. Installation expenses and electrical and plumbing work are allowable only for those or similar appliances that were previously installed in the residence the employee is leaving. This allowance is not to cover kitchen cabinet work or other finishing work necessary as a result of the appliance installation. It is to cover necessary plumbing and electrical work only.

7. *Fees for Custodial Care.*—Employees who have dependents that require custodial care (babysitters, practical nurses, etc.) while such employees are moving or house hunting, may be reimbursed for reasonable expenses in connection therewith to the extent considered necessary by the local Manager.

8. *Installing and Altering Carpets and Drapes.*—Expenses incurred to install and/or alter carpets or drapes to fit the new residence will be allowed provided the same items were installed previously in the residence the employee is leaving. Cleaning of drapes or carpets is not authorized.

9. *Tuning of TV Set and Piano.*—Expenses in connection with tuning TV sets and pianos required as a result of the move will be allowed. This includes installation of an aerial but does not include the purchase of an aerial. This does not include expenses for parts replacement caused by damage in transit. Such expenses should be processed in accordance with instructions for damage in transit.

10. *Miscellaneous Expense.*—IBM will reimburse an employee with resident dependents $100.00 and an employee without resident dependents $35.00 to cover all other miscellaneous expense not listed. This expense reimbursement is to be requested on the same Moving and Living Expense Account that covers the mover's invoice and is to be shown as Miscellaneous Expense as indicated on exhibit in this section.

The home guarantee policy, if agreed upon by the employee, provided for an appraisal of the home and guaranty that if the net selling price is less than the appraisal IBM will reimburse the employee for the difference.

In connection with Lull's transfer from Hawaii to Seattle in August 1960, he applied for and received reimbursement in 1960 for expenses in the amount of $3,370.10 and in 1961 in the amount of $3,521.01. These expenses were for mover's fee, air fares, room and meals, babysitting, car rentals, appliances, water and gardener service, interest, real estate taxes, house insurance, miscellaneous expenses, and closing costs.

When the Lulls moved from Hawaii to Seattle, the family, six persons, located in a motel about August 7, 1960, and began to look for housing. Within a week they located and offered to purchase a house, which offer was accepted. They could not move immediately because their furniture did not arrive until after Labor Day. They remained in the motel until then. They incurred room and meals expenses during this period, also car rentals, babysitting expenses, and others. The expenses claimed for real estate taxes, interest, house insurance, and garden services were in connection with their house in Hawaii.

The Lulls' home in Hawaii had a cost basis of $22,724. Under IBM's House Guaranty Policy, this was appraised at $28,166 in July 1960. IBM estimated that these petitioners would receive an equity of $7,500 upon the sale and advanced that amount to Lull in August 1960 for use in acquiring a new residence near Seattle. The Lulls purchased a home in Bellevue, Wash., in September 1960 for $30,000. The house in Hawaii was sold in July 1961 for $22,500 with expenses of $1,185. The Lulls realized $6,851 from this transaction and remitted $649 to IBM, the difference between $7,500 advanced and $6,851 realized.

The petitioners did not report as income on their tax returns any of the reimbursements described above.

In the Lull case respondent determined (1) that $891.37 of the expense reimbursement of $3,370.10 to Lull in 1960 was properly excludable from income and $2,478.73 was includable, subject to allowance of deductions for real estate taxes of $74.71 and interest of $367.91 as itemized nonbusiness deductions, and (2) that the $7,500 indemnification for loss on residence constituted taxable income in 1960, the $649 refund of a part thereof in 1961 being treated as deductible in 1961, and (3) that $1,928.93 of the expense reimbursement of $3,521.01 in 1961 was properly excludable and $1,592.08 was includable as income, subject to deductions of $700.33 for interest and $177.31 for real estate taxes. These interest and real estate tax items were among the reimbursed amounts in each year.

The exclusions allowed by respondent in the Lull case were for—

| | |
|---|---:|
| 1960 Air transportation | $830.32 |
| 1960 Room and meals | 51.05 |
| 1960 Taxi fares | 10.00 |
| 1961 Moving furniture | 1,928.93 |

Lull received reimbursement for room and meals in 1960 in the amount of $920.12 and for car rental and taxi $24.25, which respondent treated as personal expenses except as shown above.

In connection with Simpson's transfer from Los Angeles to White Plains in 1959 he applied for and received reimbursement of expenses aggregating $10,155.64. These expenses were for mover's fee, freight on shipment of auto, air transportation, meals and tips, lodging, auto

expense for house hunting, babysitting, miscellaneous expenses, and expenses relating to the disposition of the home at Los Angeles and installation of equipment and drapes at the new home in Darien, Conn.

In connection with Simpson's transfer from White Plains to Seattle in 1961, he applied for and received reimbursement of expenses aggregating $8,764.34. These expenses were for mover's fee, auto expense driving across country, air transportation, lodging, meals and tips, auto expense for house hunting, dog shipment, babysitting while house hunting, miscellaneous expenses, and expenses relating to the disposition of the home at Darien, and acquisition of a home near Seattle and installation of equipment there. Among these was $146.38 for interest on the mortgage on the property at Darien.

The Simpsons had purchased their home in Los Angeles for $47,857. Upon the transfer of Simpson to White Plains the home was appraised at $51,750 pursuant to IBM's Home Guaranty Policy. It was sold April 24, 1959, for $49,500, with the selling costs of $2,575. The difference, $4,825, was paid Simpson by IBM in 1959.

After arriving at White Plains, the Simpsons purchased a home at Darien for $54,000 in February 1959. Upon the transfer to Seattle, this home was appraised at $58,000 pursuant to the Home Guaranty Policy. It was sold in June 1961 for $56,000, with selling costs of $162.70. The difference of $2,132.70 was paid Simpson by IBM in 1961.

The Simpsons acquired a residence at Mercer Island, Wash., in June 1961 at a cost of $74,000.

The petitioners did not report as income on their tax returns any of the reimbursements described above.

In the Simpson case respondent determined (1) that $5,417.13 of the expense reimbursement of $10,155.64 to Simpson in 1959 was properly excludable from income and $4,738.51 constituted taxable income, (2) that $4,668.87 of the expense reimbursement of $8,764.34 in 1961 was properly excludable and $4,095.47 constituted taxable income, (3) that the indemnification in 1959 on sale of the residence in Los Angeles in the amount of $4,825 and in 1961 on the sale of the residence in Darien in the amount of $2,162.70 constituted taxable income.

In the Simpson case respondent treated as excludable reimbursements in 1959 the following items:

| | |
|---|---:|
| Mover's fee | $3,847.22 |
| Air transportation | 1,016.25 |
| Freight, auto shipment | 533.16 |
| Meals | 10.00 |
| Carfare and taxi | 7.50 |
| Car mileage | 3.00 |
| Total | 5,417.13 |

In the Simpson case respondent treated as excludable reimbursements in 1961 the following items:

| | |
|---|---:|
| Mover's fee | $3, 900. 51 |
| Auto transportation | 207.74 |
| Air transportation | 399. 20 |
| Lodging | 57. 02 |
| Meals | 90. 00 |
| Parking | 14. 40 |
| Total | 4, 668. 87 |

In connection with each move, the Simpsons made several air trips to the new location for house hunting and incurred lodging expenses and babysitting expenses at these times. Respondent treated one air trip for each person as an excludable item, all other such expenses as personal except as shown above.

OPINION

International Business Machines Corp., in its nationwide scope of operations, finds it necessary to transfer some of its able employees from one city to another for its own convenience. This occurs so frequently that the corporation has developed a policy with respect to payments to these employees to ease the burdens of moving, to reduce their concern over possible loss on the sale of the old home, and to help them in acquiring a new one. The principal issue for decision is to what extent are the employer's payments in reimbursement of the employee's expenses incurred in connection with the move includable in the gross income of the employee.

Payments by an employer to an employee which are compensation for services are taxable income under section 61, I.R.C. 1954. An employee is entitled to certain deductions from gross income authorized in section 62(2), which include expenses incurred in connection with the performance of services as an employee under a reimbursement arrangement, travel expenses while away from home incurred in the performance of services, and transportation expenses so incurred. Section 262 provides that no deductions are allowable for personal, living, or family expenses, except as expressly provided.

Respondent's position is that the payment or reimbursement by an employer of the cost of moving an employee, his immediate family, household goods, and personal effects from one place of employment to another, primarily for the benefit of the employer, is not compensatory in nature and such payments are not includable in the gross income of the employee if the total amount is expended for such purposes, but that amounts paid for expenses in excess of those items, even though related to and occasioned by the transfer, are essentially for personal, family, or living expenses and represent compensation

for services. This position is stated in Rev. Rul. 54-429, 1954-2 C.B. 53, and amplified in Rev. Rul. 65-158, 1965-1 C.B. 34.

Respondent has treated the amounts paid by IBM for actual travel, movement of families, furniture, and household effects, as excludable from gross income of the petitioner-employees. The expenses here in issue are referred to by respondent as "indirect" moving expenses, and include payments for babysitting, laundry, telephone, house-hunting trips, carpet or drapery alterations, also interest, real estate taxes, house insurance, garden service, and mortgage costs. These, says respondent, are essentially living expenses, even though occasioned by the transfer of the employee. Respondent determined that reimbursements for these items are includable in the gross income of the employees. The employees also had the benefit of the employer's assistance in selling their homes or acquiring new ones. This took the form of a guaranty to receive appraised value on sale and an advance of estimated equity to facilitate a purchase. Respondent has determined that the money payments or advances on this account are includable in gross income of the employees.

Petitioners contend that reimbursements for the contested expenses incident to the moving are not compensatory, have not resulted in any economic gain or benefit to them, and should be excludable from gross income. In the alternative, if these payments are includable, petitioners argue that they should be entitled to a corresponding deduction of such amounts as business expenses incurred in connection with their employment.

Petitioners contend that the payments by IBM with respect to the home guaranty are gain from the sale or other disposition of property under section 1001 of the 1954 Code, and are a part of the "amount realized" upon such sale. They say that since in each case they purchased a new home at a price in excess of the adjusted basis of the prior home, the payment, pursuant to section 1034 (providing for nonrecognition of gain on the sale of a residence under certain circumstances), is not taxable. They cite *Otto Sorg Schairer*, 9 T.C. 549 (1947), in which it was held that an amount paid by an employer in reimbursement of the loss sustained on the sale by an employee of his home when moving at the direction of his employer to a different city was to be treated as a part of the "amount realized" upon the sale and was not includable in the gross income of the employee.

In *Harris W. Bradley*, 39 T.C. 652 (1963), affd. 324 F. 2d 610 (C.A. 4, 1963), this Court held that a payment by the taxpayer's employer in reimbursement of the employee's loss on the sale of his residence in connection with his accepting employment at a different location was taxable to the employee as additional compensation. The Court declined to follow the *Schairer* case.

In *Willis B. Ferebee*, 39 T.C. 801 (1963), it was held that the payment by the taxpayer's employer of the real estate sales commission on the sale of his residence when moving to accept a new job at a different location, was taxable as compensation to the employee.

The *Bradley* and *Ferebee* cases concerned new employees, while Schairer had been an employee for several years. In *Ernest A. Pederson, Jr.*, 46 T.C. 155 (1966), a case involving an old employee, the Court held that an amount paid by the employer in reimbursement of the expenses of selling the employee's residence upon being transferred for the convenience of the employer constituted taxable income to the employee. See, to the same effect, *Harvey* v. *Commissioner*, ——F. 2d —— (C.A. 6, Oct. 21, 1968), affirming a Memorandum Opinion of this Court, a case also involving an old employee, whose employer paid him for a part of the loss sustained on the sale of his residence below its cost to him, as a result of a transfer to a new location. This was held to be includable in the employee's gross income.

In *Jesse S. Rinehart*, 18 T.C. 672 (1952), it was held that an amount paid an employee to assist him in purchasing a new residence following a transfer at the instance of his employer, was taxable as compensation for services.

The amounts paid to the employee in such cases, and in the present cases, are not part of the "amounts realized" upon the sale. They are not paid by the purchaser. The employer does not purchase the house. The payments are not made pursuant to the sales contract, but pursuant to the employment contract. They are made to secure better services from the employee by relieving him of concern over the sale. Payments to secure better services represent compensation. *Commissioner* v. *LoBue*, 351 U.S. 243, 247 (1956).

The petitioners' contention that these payments are not taxable because of the application of section 1034,[1] providing for nonrecognition of gain on the sale of a taxpayer's residence under certain circumstances, depends upon whether the payments under the home guaranty policy were a part of the "amount realized" upon the sale, thereby being a part of the gain subject to nonrecognition under that section. Since we hold that these payments were not a part of the "amount realized" upon the sale, the petitioners' contention is without merit.

In the sale of the Simpson's house in Darien, the petitioners received a net selling price in excess of their adjusted basis in the property.

---

[1] SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

Nonrecognition of their gain was allowed because they purchased another residence in the same year for a greater price. In the sales of the Simpson's house in Los Angeles and the Lull's home in Honolulu the net selling prices were less than the adjusted cost basis of each property, and each of the petitioners had a loss. Such losses upon sale of a residence are personal and nondeductible. Income Tax Regs., sec. 1.165–9 (a).

We conclude that the amounts received by petitioners pursuant to the home guaranty policy are taxable as compensation.

The Lulls incurred certain expenses in house hunting and for temporary quarters and meals while awaiting availability for occupancy of the new residence. The Simpsons made various trips for house hunting and incurred expenses for altering carpets and drapes to fit the new residences. These expenses were included among the items reimbursed by IBM. Such expenses have been held to be personal and living expenses, reimbursement of which represents additional compensation to the employee. *England* v. *United States*, 345 F. 2d 414 (C.A. 7, 1965) ; *Light* v. *Commissioner*, 310 F. 2d 716 (C.A. 5, 1962), affirming a Memorandum Opinion of this Court.

Petitioners cite and rely upon *Homer H. Starr*, 46 T.C. 743 (1966), in which this Court held that an amount received by an employee in reimbursement of expenses incidental to his transfer at the behest of his employer did not constitute taxable income to him. The reimbursement was for Starr's meals, lodging, and incidental expenses at the new location prior to the arrival of his family.

The decision of this Court in *Starr* was reversed by the Court of Appeals for the Tenth Circuit, *Commissioner* v. *Starr*, 399 F. 2d 675 (1968), which held that the reimbursement of the expenses in question was income to the employee and that the temporary living expenses were not deductible business expenses. The Court followed its earlier opinion in *United States* v. *Woodall*, 255 F. 2d 370 (C.A. 10, 1958). The *Woodall* case was likewise followed by the Ninth Circuit Court of Appeals in *Koons* v. *United States*, 315 F. 2d 542 (1963). The decision of the Court of Appeals in *Commissioner* v. *Starr*, *supra*, was followed by this Court in *Norvel Jeff McLellan*, 51 T.C. 462.

*Ritter* v. *United States*, 393 F. 2d 823 (Ct. Cl. 1968), certiorari denied 393 U.S. 844, involved facts substantially similar to those involved in the present Lull and Simpson cases. Riter was likewise an employe of IBM. He was transferred from San Francisco to Los Angeles in 1958 and received reimbursements from IBM under the same company policies as are involved in the present cases, for moving and related expenses, and for the loss on the sale of his residence in the San Francisco area. The Court of Claims held that the reimbursed amounts in dispute were includable as ordinary income and

that the "indirect" expenses were not deductible by the taxpayer as ordinary and necessary business expenses. We think similar conclusions are required in the present cases.

We hold that the reimbursements and advances in question are taxable as additional compensation to the petitioners and that they are not entitled to deductions for the corresponding expenses.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

DAWSON, *J.*, dissenting in part: I am in agreement with the majority's holding which includes in gross income the difference between the selling prices of petitioners' residences and their appraised values. However, I disagree with the majority opinion insofar as it holds that reimbursement for incidental and reasonable moving expenses should be taxable to petitioners. The reasons for this view are succinctly stated in Judge Simpson's concurring opinion in *Norvel Jeff McLellan*, 51 T.C. 462 (1968). I do not regard the opinion of the Court of Appeals for the Ninth Circuit in *Koons* v. *United States*, 315 F. 2d 542, as controlling in this case.

RAUM, FAY, and SIMPSON, *JJ.*, agree with this dissent.