Raymond L. Opper and Myrna J. Opper v. Commissioner.
Opper v. Commissioner
Docket No. 7479-70 SC.
United States Tax Court
T.C. Memo 1972-121; 1972 Tax Ct. Memo LEXIS 135; 31 T.C.M. (CCH) 485; T.C.M. (RIA) 72121; May 25, 1972, Filed Tried in Denver, *135 Held, petitioners are not entitled to deduct maintenance expenses and depreciation on old residence offered for sale after petitioners moved into new residence. Held, further, petitioners are not entitled to deduct FICA taxes paid for employees who helped them build new residence. Raymond L. Opper, pro se, 5489 S. Kearney, Englewood, Colo. Thomas M. Ingoldsby, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in the income taxes of petitioners as follows: Year
Deficiency
1967
$107.23
1968
271.16
The issues presented for our determination are: (1) Whether petitioners are entitled to deductions for maintenance expenses and depreciation on their former personal residence which they incurred subsequent to their abandonment of the house as a residence but before it could be sold, and (2) whether petitioners are entitled to deduct as current expenses amounts contributed as FICA taxes on wages paid employees who worked on the construction of their present residence. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Raymond L. Opper and Myrna J. Opper, husband and wife, resided in *136 Englewood, Colo., at the time they filed the petition herein. They filed their joint Federal income tax returns for the taxable years 1967 and 1968 with internal revenue service director in Austin, Texas. Raymond L. Opper (hereinafter referred to as petitioner) is an enginer employed by Martin Co. In January of 1958 petitioners moved into a house they had purchased at 6651 South Bridger Court in Littleton, Colo. They occupied this home as their personal residence until 1967. Prior to their move from the South Bridger Court house in 1967, petitioners had purchased some property at 486 5489 South Kearney Street, in Englewood, Colo. With the help of a carpenter and two laborers petitioners built a new home for themselves on the South Kearney Street property during the first 9 months of 1967. In October of that year petitioners' new home was sufficiently completed for them to make it their residence. Therefore, they moved from their old home on South Bridger Court to the new South Kearney Street address. After this move, petitioners never occupied the Bridger Court house again as their personal residence. Immediately upon settling in their new house petitioners put their old home up for *137 sale. They attempted to market the house by placing a "For Sale" sign in the front yard, and on several occasions by advertising the house for sale in local newspapers. Petitioner initially set the selling price for the house at $16,000 which he refused to change. He eventually sold the house for that amount in January 1969. In the sales transaction the buyer assumed petitioners' FHA mortgage loan with an outstanding balance of $10,033.09 and made cash payments equivalent to $5,966.91. Throughout the period the Bridger Court property was offered for sale the house remained vacant. The property was never rented nor offered for rent. On one occasion petitioner rejected an unsolicited offer to rent it because he did not consider the offer a serious one. At some time in the early months of 1968 petitioners rejected a cash offer of $13,500 for the Bridger Court property. On June 26, 1968, the Federal Housing Administration appraised the value of the house and land at $16,000. Subsequently, the following October and November, petitioner granted two different parties an option to purchase the property at a stated price of $16,000. However, neither of these options was ever exercised. The *138 petitioners' cost basis in the Bridger Court property in October of 1967 was $17,089. When the house was sold in 1969, however, petitioners did not claim a loss on their 1969 Federal income tax return. During the period the Bridger Court residence was for sale petitioners incurred maintenance expenses in the amounts of $48.29 and $506.54 in 1967 and 1968, respectively. Additionally, as employers of the carpenter and two laborers who worked on the Kearney Street house, the petitioners paid $301.10 as FICA tax on their wages in 1967. On their 1967 and 1968 Federal income tax returns petitioners claimed a maintenance expense deduction in the amounts of $48.29 and $506.54, respectively, and a depreciation deduction of $138 and $640, respectively. Petitioners also claimed a deduction on their 1967 income tax return for the $301.10 they had paid in FICA taxes. In the notice of deficiency issued to petitioners respondent determined that petitioners were not entitled to any of the claimed deductions mentioned above. Opinion The first issue involves the expenses petitioners incurred while holding their house for sale during 1967 and 1968. Petitioner believes they are entitled to depreciation *139 and maintenance expense deductions for the upkeep of the house while it was on the market. He claims the deductions under the auspices of sections 167(a)(2) [1] and 212(2), and he bases his position on Commissioner v. Smith, 397 F. 2d 804 (C.A. 9, 1968), affirming a Memorandum Opinion of this Court. [2] Respondent, on the other hand, has determined that the deductions claimed in connection with the sale of the South Bridger Court house were personal expenses attendant to the disposition of petitioners' family residence and thus nondeductible, just as any loss on such residence would be nondeductible.
Though petitioner has done a commendable job of presenting his case at trial, apparently without the aid of an attorney, he has nevertheless failed to show sufficient evidence of facts which would prove his entitlement to the claimed deductions. The essential element absent in petitioner's case is proof that he intended to, or actually did, convert his former residence into income-producing *140 property prior to its sale. Gerald Melone, 45 T.C. 501 (1966); Marjorie M. P. May, 35 T.C. 865 (1961), affd. 299 F. 2d 725 (C.A. 4, 1962); Charles F. Neave, 17 T.C. 1237 (1952). Without such proof there can be no recognition, for tax purposes, of depreciation on a house, maintenance expenditures, or losses on the 487 sale of a house. Richard R. Riss, Sr., 56 T.C. 388 (1971); Lindsay C. Howard, 16 T.C. 157 (1951), affd. 202 F. 2d 28 (C.A. 9, 1953); Helen D. Emmet, 11 T.C. 90 (1948). In other words, if a taxpayer, upon abandonment, fails to convert his former home into an income-producing investment, any sale of the house will be deemed the sale of a personal residence. See sec. 1.165-9, Income Tax Regs. Attendantly, any expenses incurred to maintain the house will be a nondeductible personal expense. See sec. 262. The recent case of Frank A. Newcomble, 54 T.C. 1298 (1970), is fully dispositive of this first issue. In that case, where nearly all of the relevant facts were similar to petitioners' circumstances, this Court denied the taxpayer his alleged depreciation and maintenance expense deductions on the ground that the marketed house was his former personal residence which had *141 not been converted to a speculative investment or income-producing property. Five factors were considered by the Court in reaching its decision: (1) How long the house was actually occupied by the petitioner; (2) was it available for his personal use after he moved out; (3) was the character of the property residential, business, or educational; (4) was the house rented or offered for rent by the taxpayer; and (5) what was the nature of the petitioner's offers to sell the house. If we answer these questions from the facts before us we find that petitioner and his wife actually occupied the South Bridger Court house almost continuously for the 9 years prior to vacating it and offering it for sale. Upon their removal from the house in October of 1967, it remained vacant until its sale in January of 1969, thus rendering the residence potentially available for petitioner's personal use, even though he and his wife were living in their new South Kearney Street home. Absent evidence to the contrary, we assume that the South Bridger Court house was essentially residential in nature. Petitioner made no attempt to rent the house and he rejected an unsolicited rental offer because the potential *142 tenant did not offer a firm rental price. Finally, the nature of petitioner's attempts to sell the house was basically to set a firm price, approximately equivalent to his cost basis in the property, and stick with it until the house sold. There was some disagreement as to the fair market value of the home when petitioners vacated it in October of 1967. Two figures were offered at trial, $13,500 and $16,000. Using either figure and petitioner's basis in the property of $17,089, it is clear that the $16,000 purchase price which taxpayer demanded had no expectation of profit, in the tax sense, but instead sought only to mitigate his potential loss. See majority opinion in Frank A. Newcombe, supra.There is no convincing evidence that petitioner held the property after it was vacated in the hope of realizing from its sale more than he considered the fair market value of the property to be at the time the house was vacated and offered for sale. See concurring opinion in Frank A. Newcombe, supra.The property was offered for sale immediately after it was vacated at a price we must assume petitioner though it was worth. The FHA appraisal made in June 1968 supported petitioner's asking price, *143 and we can find no expectation of profit to be realized from appreciation in value after the property was vacated. It would be difficult to find that the property was "held for the production of income" under such circumstances. We have stated that the key question, in cases of the type involved herein, is the purpose or intention of the taxpayer in light of all facts and circumstances. As in the Newcombe case, the facts in this case, as a whole, bring us to the conclusion that petitioner did not intend to, and did not in fact, convert his former residence into an income-producing investment prior to its sale. Consequently, we must uphold the respondent's determination on the first issue. Likewise, in the second issue, we are compelled to hold for respondent. Petitioner has claimed a deduction for FICA taxes he paid on the wages of the workers who constructed his South Kearney Street home. However, he cites no authority in support of his position. It is now well established that all tax deductions are a matter of legislative grace. New Colonial Co. v. Helvering, 292 U.S. 435 (1934). Accordingly, where there is no statutory provision for deduction of an expense item, taxpayers are *144 not entitled to such a benefit. Lull v. Commissioner, 434 F. 2d 615 (C.A. 9, 1970), affirming 51 T.C. 841 (1969). Section 164 provides for the deduction of certain taxes borne by taxpayers. However, it contains no mention of such a deduction allowance for FICA taxes. Moreover, 488 section 1.164-2(a), Income Tax Regs., specifically prohibits the deduction of FICA under section 164. An employer, then, is entitled to deduct social security taxes it pays on behalf of its employees as business expenses, and not as taxes paid. [3] Because petitioner is not in the business of constructing houses, the FICA tax is not deductible under section 162 as a business expense; nor is the tax deductible by him under section 212 because the petitioner was constructing the house as his personal residence and not for the production of income. Decision will be entered for the respondent. Footnotes
1. 1954 Internal Revenue Code↩, unless specifically designated otherwise.
2. For the reasons stated in Frank A. Newcombe, 54 T.C. 1298↩, we consider the Smith case inapposite and of little precedential value.
3. See John Calamaras T.C. Memo. 1960-201↩.